United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTOMOTIVE INDUSTRIES PENSION TRUST FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SYED ALI, et al., <br><br> Defendants. | Case No.: C-11-5216 JCS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

## I.  INTRODUCTION

Plaintiffs Automotive Industries Pension Trust Fund (the "Trust") and its Trustees (collectively, "Plaintiffs") bring this ERISA action against Defendants Syed Ali aka Bobby Syed Ali ("Ali") and Bay Bridge Dodge Chrysler Jeep, Inc. ("Bay Bridge, Inc.") (collectively, "Defendants"), seeking recovery of withdrawal liability pursuant to 29 U.S.C. § 1381. Presently before the Court is Defendants' Motion to Dismiss ("Motion") based on Rules 12(b)(6) & (7) of the Federal Rules of Civil Procedure. A hearing on the Motion was held on July 13, 2012 at 9:30 a.m. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

---

[1] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. REQUEST FOR JUDICIAL NOTICE

Defendants have requested under Fed. R. Evid. 201(b) that the Court take judicial notice of four documents that are matters of public record. Defendants' Request for Judicial Notice in Support of Motion to Dismiss ("RJN"), 1–2. Fed. R. Evid. 201(b) states that courts may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Plaintiffs have not objected to Defendants' request or challenged the authenticity of any of the attached documents. Accordingly, the Court takes judicial notice of these documents pursuant to Rule 201 of the Federal Rules of Evidence.

## III. BACKGROUND

### A. The Complaint

Plaintiffs initiated this action on October 25, 2011, and filed their First Amended Complaint ("FAC") on Aril 5, 2012. In the FAC, Plaintiffs allege that non-party Simi Management Corporation dba Connell Auto Center ("Connell") was a participating employer in the Trust pursuant to a collective bargaining agreement with the Machinists Automotive Trades District Lodge No. 1546 and through Connell's dealership operations at Connell Chrysler Jeep Dodge ("Connell Dealership"), located at 2735 Broadway Avenue, Oakland, California. FAC ¶¶ 1-2, 15. In May 2007, Connell entered into an asset purchase agreement ("Purchase Agreement") with Bay Bridge Dodge Chrysler Jeep, LLC ("LLC"), a company run by Defendant Ali, whereby the LLC purchased the assets of the Connell Dealership.[2] *Id.* at ¶ 16. On August 30, 2007, a Bill of Sale was executed between Connell and Bay Bridge, Inc. *Id.* at ¶ 17. Plaintiffs allege that Ali assigned all his rights and obligations under the Purchase Agreement to Bay Bridge, Inc. *Id.* As a result of the sale, Connell ceased all business operations as the Connell Dealership in August 2007 and made a complete withdrawal from participation in the Trust under ERISA Section 4203 (29 U.S.C. § 1383). *Id.* at ¶ 18.

Plaintiffs further allege that pursuant to Section 2 of the Purchase Agreement, Defendants acquired from Connell "substantially all of the dealership's assets, goodwill, franchise, intangible

---

[2] The Purchase Agreement also involves the sale of Connell's Nissan dealership; however, that aspect of the agreement is not at issue in this case. FAC ¶ 16 n.1.

2

property, vehicle inventory, parts and accessories inventory, miscellaneous inventory and supplies and service or repair work in progress." *Id.* at ¶ 19. Additionally, Defendants have "substantially continued" the Connell Dealership's business operations, "providing the same services; using the same facilities, machinery and equipment; employing the same employees; completing service works in progress and servicing the same customers, all as contemplated by the Purchase Agreement." *Id.*

Plaintiffs contend that Section 5 of the First Amendment to the Purchase Agreement, executed on May 23, 2007, contemplates the effect of withdrawal liability on the asset sale, and provided Connell the ability to terminate the sale in light of any withdrawal liability. *Id.* at ¶ 21. That Section reads as follows:

> Purchaser acknowledges that Seller has a collective bargaining agreement (the "Contract") and a union pension plan (the "Plan") in place in connection with Seller's operation of the Dealership, both of which have been or will be included on Schedule 5.8 of the Agreement. During the Due Diligence Period, Seller shall have the opportunity to confirm that there is no shortfall in the Plan for which Seller would be liable upon Purchaser's assumption or termination after Closing of the Plan, as Purchaser may elect. In the event Seller is liable for a shortfall in the Pan of an amount Seller is not willing to accept in Seller's sole discretion, Seller shall have the right to terminate this Agreement prior to expiration of the Due Diligence Period. In the event of such termination by Seller, the Deposit shall be returned to Purchaser and neither party shall have any other or further obligation to the other except that Purchaser shall remain liable to Seller for any damage to the Premises from any testing that Purchaser may have performed.

*Id.*; Ex. 1 (Purchase Agreement), First Amendment, § 5.

In the Second Amendment to the Purchase Agreement, Plaintiffs allege, the parties determined that Defendants would bear sole responsibility for the amount of any unfunded pension liabilities under the Union's pension plan, including withdrawal liability, incurred by Connell as a result of the sale. *Id.* at ¶ 22. That Section states:

> Purchaser acknowledges that Seller has a collective bargaining agreement (the "Contract") and a union pension plan (the "Plan") in place in connection with Seller's operation of the Dealership, both of which have been or will be included on Schedule 5.8 of the Agreement. Purchaser agrees that in the event and as a result of the consummation of the sale of the Dealership in accordance with this Agreement, there is any cost to Seller for unfunded

3

1  pension liabilities under the Plan or similar items, such cost shall be the sole responsibility of Purchaser and Purchaser shall indemnify, defend and hold Seller free and harmless from any costs thereof.

*Id.*; Ex. 1 (Purchase Agreement), Second Amendment, § 1.

On September 27, 2007, Plaintiffs notified Connell of the withdrawal liability, which was assessed at $695,539.00. *Id.* at ¶ 23. Plaintiffs informed Connell that the amount is payable either in one lump sum payment before October 31, 2007 or is payable in no more than twenty-nine quarterly installment payments commencing October 31, 2007; that any request for review by Connell must be made within 90 days from receiving the notice of withdrawal liability assessment; and that any request for review does not postpone the deadline for making either payment. *Id.* On February 21, 2008, Plaintiffs sent a letter to Connell notifying it that the first quarterly liability payment which was due on October 31, 2007 had not been received. *Id.* at ¶ 24. Connell was also informed that if the payment was not made in 60 days, the Trust will declare Connell in default. *Id.* No payment was made. *Id.* at ¶ 25.

On June 8, 2009, Plaintiffs filed suit against Connell in the Northern District of California, *see Auto. Indus. Pension Trust Fund, et al. v. Simi Mgmt. Corp. dba Connell Auto Center, et al.*, Case No. 09-2550 JSW ("Connell Action"), for collection of the withdrawal liability. *Id.* at ¶ 26. The Connell Action sought damages from the Connell defendants for the entire amount of the outstanding withdrawal liability of $695,539.00 pursuant to ERISA Section 4219(c)(5) (29 U.S.C. § 1399(c)(5)), plus accrued interest, liquidated damages and attorney's fees and costs pursuant to ERISA Sections 4301(b) and 502(g)(2) (29 U.S.C. § 1301(b) and 1132(g)(2)). *Id.* In or about January 2011, the parties to the Connell Action reached settlement and pursuant to a stipulation the case was dismissed with prejudice. *Id.* at ¶ 27.

Immediately prior to the settlement of the Connell Action, Connell produced to Plaintiffs the Purchase Agreement. *Id.* at ¶ 28. Plaintiffs allege that this was their first notice of any agreement between Connell and Defendants regarding payment of withdrawal liability. *Id.* By letter dated March 21, 2011, the Trust notified Defendants of their liability under the terms of the Purchase Agreement for the withdrawal liability assessed against Connell. *Id.* at ¶ 29. "Specifically, the Trust notified Defendants that they were jointly and severally liable for the assessed withdrawal liability

4

1  plus interest less payments received and demanded payment in the total amount of $680,470.82." *Id.*
2  Defendants failed to respond to the Trust's demand. *Id.* at ¶ 30.
3        Plaintiffs' FAC asserts two causes of action.  First, Plaintiffs seek a claim for "federal
4  common law successor liability," which transfers liabilities of the predecessor to the successor where
5  1) the subsequent employer substantially continues the business operations of the predecessor, and 2)
6  the subsequent employer had notice of the potential liability.  *Id.* at ¶ 33 (citing *Steinbach v.*
7  *Hubbard* 51 F.3d 843, 845-846 (9th Cir. 1995)).  Plaintiffs allege that Defendants "acquired the
8  assets and business operations of Connell with both actual knowledge and constructive notice of
9  Connell's participation in the Trust and its potential liability to the Trust for unfunded pension
10 liabilities resulting from the sale."  *Id.* at ¶ 34.
11       Plaintiffs' second claim is for breach of contract based on the theory of third party
12 beneficiary.  *Id.* at ¶ 43.  Plaintiffs allege that Defendants agreed in Section 1 of the Second
13 Amendment to the Purchase Agreement "to bear sole responsibility for any withdrawal liability
14 incurred by Connell arising from the asset purchase."  *Id.* at ¶ 42.  This language, Plaintiffs contend,
15 shows that the parties' purpose in agreeing to this provision was to ensure that the withdrawal
16 liability would be paid to the Trust and therefore the parties intended to benefit the Trust.  *Id.* at ¶ 43.
17 Plaintiffs further allege that Defendants were aware of the withdrawal liability assessed against
18 Connell and breached the Purchase Agreement by failing to satisfy the withdrawal liability pursuant
19 to the Trust's demand on September 27, 2007, which demanded payment by October 31, 2007.  *Id.*
20 at ¶ 44.  Plaintiffs also appear to assert that Defendants breached the contract when they failed to
21 respond to Plaintiffs' March 21, 2011 demand to pay the withdrawal liability to the Trust.  *Id.* at ¶
22 45.

    **B.**    **The Motion**

24       On April 23, 2012, Defendants filed a Motion to Dismiss based on Rules 12(b)(6) & (7) of
25 the Federal Rules of Civil Procedure.  Motion at 1.  Regarding Plaintiffs' first claim, Defendants
26 argue that they are not successors to Connell and are therefore not liable for the withdrawal liability
27 Connell incurred.  *Id.* at 4.  Defendants first contend that successor liability does not apply because
28 Ali is not an "employer" as defined by ERISA.  *Id.* (citing 29 U.S.C. § 1002).  Furthermore,

1    Defendants argue, federal common law successor liability is not present because Bay Bridge, Inc.
2    was not formed until 16 months after the liability incurred, and Plaintiffs "fail to allege any privity,
3    unity or relationship between Connell and [Bay Bridge, Inc.]." *Id.* at 5.  Even assuming such a
4    relationship, Defendants assert that because they didn't "consent[] to be bound by the terms of the
5    Pension," they are not successors under California law.  *Id.* (citing *Ray v. Alad Corp.*, 19 Cal. 3d 22
6    (1977)).  Defendants further argue that Plaintiffs' allegations regarding consent are conclusory and
7    the language in the Second Amendment is merely an indemnity provision running in favor of
8    Connell.  *Id.* at 6.

9    Regarding the contract claim, Defendants first argue that the claim is time barred.  *Id.*
10   Defendants assert that, according to Plaintiffs' allegations in the FAC, Connell incurred liability in
11   August 2007, but the suit against Defendants was not filed until October 25, 2011, thereby exceeding
12   the two-year statute of limitations in California for an oral contract.  *Id.* at 7 (citing Cal. Civ. P. Code
13   § 339(1)).  Defendants claim that Plaintiffs "have not shown the existence of any writing constituting
14   an agreement between Plaintiffs and Defendants" that would entitle Plaintiffs to a four-year statute
15   of limitations.  *Id.*

16   Defendants also contend that the contract claim fails because the provision in the Purchase
17   Agreement cited by Plaintiffs does not "expressly" provide a benefit to Plaintiffs, the third party, and
18   therefore Plaintiffs are not entitled to third party beneficiary status.  *Id.* at 7-8 (citing, *inter alia*, *R. J.*
19   *Cardinal Co. v. Ritchie*, 218 Cal. App. 2d 124 (1963)).  According to Defendants, Section 1 of the
20   Second Amendment contains only an indemnity provision for the benefit of Connell, not Plaintiffs.
21   *Id.* at 8.

22   Defendants next appear to argue that both claims should be dismissed based on the California
23   doctrine of retraxit.  *Id.* at 9 (citing, *inter alia*, *Torrey Pines Bank v. Super. Ct.*, 215 Cal. App. 3d 813
24   (1980)).  Defendants contend that retraxit applies where a party dismisses a previous action with
25   prejudice and operates as a complete bar to any future actions on the same controversy.  *Id.*  Because
26   Plaintiffs dismissed with prejudice their claims against Connell, Plaintiffs' claims against
27   Defendants in this action, "which are identical to the issues at stake in the prior action, are barred
28   against [D]efendants herein as a matter of law."  *Id.*

1        Finally, Defendants argue that the present action should be dismissed because Rule 19
2 required Plaintiffs to join Defendants in their *previous* action against Connell. *Id.* at 10-11.
3        In their Opposition, Plaintiffs first argue that Defendants' Motion is untimely and should be
4 dismissed on that basis. Opposition at 6. Specifically, Plaintiffs contend that they filed and served
5 their FAC on April 5, 2012 pursuant to Rule 15(a)(1). *Id.* Although Defendants' response to the
6 FAC was due within 14 days of service, or by April 19, 2012, Defendants did not file the present
7 Motion until April 23, 2012. *Id.*
8        Turning to the merits, Plaintiffs insist they have sufficiently pled a cause of action for federal
9 common law successor liability. *Id.* Plaintiffs assert that the doctrine extends to ERISA actions,
10 including those seeking withdrawal liability. *Id.* at 6-7 (citing, *inter alia*, *Trustees for Alaska
11 Laborers-Constr. Indus. Health & Sec. Fund v. Ferrell*, 812 F.2d 512 (9th Cir. 1987); *Auto. Indus.
12 Pension Trust Fund v. S. City Ford, Inc.*, 2012 U.S. Dist. LEXIS 51807, *6-7 (N.D. Cal. 2012);
13 *Operating Eng'rs & Pension Trust Fund v. W. Power & Equip. Corp.*, 2011 U.S. Dist. LEXIS
14 32349, *11 (N.D. Cal. 2011)). Regarding the first requirement for successor liability—substantial
15 continuation of the predecessor's business operations—Plaintiffs argue that their complaint is
16 adequately pled. *Id.* at 7. Specifically, Plaintiffs point to the Purchase Agreement, "in which
17 [D]efendants acquired all of Connell's dealership assets including without limitation, the
18 dealership's fixed assets, goodwill, franchise, intangible property, vehicle inventory, parts and
19 accessories inventory, miscellaneous inventory and supplies and service or repair work in progress."
20 *Id.* (citing FAC ¶¶ 19, 36). Plaintiffs also assert that Defendants thereafter substantially continued
21 Connell's business operations. *Id.* Additionally, the second requirement—notice of the potential
22 liability—is adequately pled based on the allegation that the Purchase Agreement indicates actual
23 knowledge, and constructive knowledge, of the withdrawal liability. *Id.* at 7-8 (citing FAC ¶¶ 20-22,
24 34, 35).
25        Turning to the breach of contract claim, Plaintiffs reject Defendants' contention that the
26 claim is barred by the statute of limitations. *Id.* at 9-10. Rather, Plaintiffs contend, their claim, filed
27 on October 25, 2011, is within the four-year time period required by California law for a written

contract because Defendants' breach occurred, at the earliest, on October 31, 2007 when they failed to make the first quarterly withdrawal liability payment. *Id.* at 10.

Plaintiffs also assert that they have adequately pled the merits of their contract claim based on third party beneficiary status. *Id.* at 10-13. Specifically, Plaintiffs assert that they have alleged that the Purchase Agreement shows that Connell was given an opportunity to determine the amount of unfunded pension liability as a result of leaving the Trust, and, once this figure was ascertained, the parties agreed to shift responsibility of payment to Defendants. *Id.* at 11-12 (citing FAC ¶¶ 20-22). Plaintiffs contend that the Purchase Agreement contains both a promise to assume "sole responsibility" for any "unfunded pension liabilities under the Plan," and a promise to indemnify Connell for the cost of any such liabilities. *Id.* at 11 (citing FAC ¶ 22). Plaintiffs argue these allegations meet the requirements for third party beneficiary status under California law because they show an intent by the contacting parties to confer a benefit on the Trust; namely, payment of the withdrawal liability. *Id.* (citing, *inter alia*, *Le Ballister v. Redwood Theatres, Inc.*, 1 Cal. App. 2d 447, 449 (1939)).

Plaintiffs next reject Defendants' apparent argument that the claims should be dismissed because they are barred by retraxit. *Id.* at 13-14. Plaintiffs assert, *inter alia*, that retraxit is state law and does not apply, and even if it did, barring Plaintiffs' claims is not warranted since retraxit requires presentation of identical issues and the issues presented in the Connell Action are not present here. *Id.* at 14. Plaintiffs argue that the only issues before the Court are whether Defendants "are a successor employer to Connell and liable to the Trust for the withdrawal liability pursuant to the federal common law doctrine of successor liability and through breach of the agreement to bear the cost of the withdrawal liability." *Id.*

Finally, Plaintiffs argue that, contrary to Defendants' suggestions, Rule 19 does not provide for dismissal where a plaintiff failed to join a party in a previous action. *Id.* at 16. Additionally, Plaintiffs assert that no other party is "necessary" to this suit, and Defendants can cross-complain against other parties to the extent necessary to protect their interests. *Id.* at 16-17.

In their reply, Defendants narrow their retraxit argument to just Plaintiffs' contract claim, and assert that the California doctrine applies here because "[f]ederal courts exercising jurisdiction in

8

diversity of citizenship cases are obligated to follow state rules affecting recovery." Reply at 4 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Defendants contend that identical issues are presented in this action as in the Connell Action since Plaintiffs are seeking the same damages against Defendants that they sought against Connell. *Id.* at 4-5. Defendants also insist that the Second Amendment to the Purchase Agreement, in addition to merely constituting an indemnity provision, applies only to "unfunded pension liabilities," not withdrawal liabilities. *Id.* at 5. Defendants conclude that "[t]here is a difference." *Id.* (citing *Dorn's Transp., Inc. v. Teamsters Pension Fund*, 787 F.2d 897 (3rd Cir. 1986); *Park S. Hotel Corp. v. N.Y. Hotel Ass'n Pension Fund*, 851 F.2d 578 (2nd Cir. 1988)).

## III.   ANALYSIS

### A.   Legal Standard

#### 1.   Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id*.

9

at 1965. However, a complaint does not need detailed factual allegations to survive dismissal. *Id*. at 1964. Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id*. at 1974. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 1965 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

### 2. Rule 12(b)(7)

A complaint may also be dismissed for failure to join an indispensable party pursuant to Rule 19 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(7); 19(b). To find that a person who is not joined is "indispensable," the absent person must first be deemed necessary as a "person to be joined if feasible" under Rule 19(a)(1) and (2). Fed. R. Civ. P. 19(b); *see Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002). If joinder of a party will not deprive the court of subject matter jurisdiction, the party shall be joined as necessary if:

> (1) [I]n the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

If the person is necessary, and cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b). Rule 19 then provides four factors for the trial court to consider, in determining whether the matter should proceed or be dismissed for failure to join the absent person:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.*

### B. Whether Defendants' Motion is Untimely

Plaintiffs contend that Defendants' Motion was filed four days late and should therefore be dismissed as untimely. Opposition at 6. Plaintiffs, however, are incorrect that the Motion is untimely. The only time limitation on Rule 12(b) motions is that they "be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Rule 15 specifies the time for serving a responsive pleading to an amended complaint. Fed. R. Civ. P. 15(a). Under Rule 15(a)(3), "any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."

However, "[t]he mere passage of the time for the responsive pleading does not speak to whether Defendants' motion to dismiss was timely." *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 2012 WL 202664, at *3 (S.D. Cal. Jan. 23, 2012). It is well established that a 12(b) motion is not a "responsive pleading," *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 788 (9th Cir. 2000) (citing Fed. R. Civ. P. 7(a)), and therefore it need not be filed within the time constraints outlined above, *Aetna Life Ins. Co. v. Alla Med. Servs. ., Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988) ("[W]hile some courts hold that Rule 12(b) motions must be made within 20 days of service of the complaint, the rule itself only requires that such motions be made before pleading if a further pleading is permitted." (internal quotation marks omitted)). Here, Defendants' Motion was filed before any responsive pleading, which is all that is required. Accordingly, the Motion is timely.[3]

### C. Whether Plaintiffs Have Alleged Sufficient Facts to Proceed on the Theory of Successor Liability

As an initial matter, the Court notes that both parties imprecisely treat successor liability as Plaintiffs' cause of action itself rather than as simply a means of imposing liability on the underlying cause of action. Perhaps this is because both parties appear to assume that the underlying liability—

---

[3] The Court notes that even if Defendants' Motion had been filed after any responsive pleading, the Court could construe it as a 12(c) motion for judgment on the pleadings rather than deny it as being untimely. *See Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542, 1543 (N.D. Cal. 1990).

Connell's withdrawal liability—is established. Regardless, the distinction is important. In their complaint, Plaintiffs state that jurisdiction is conferred upon this Court pursuant to Sections 4301(c) and 502(e)(1) and (f) of ERISA (29 U.S.C. §§ 1451(c) and 1132(e)(1) and (f)). Successor liability, however, has not been shown to itself be an independent cause of action under those sections, or any section, of ERISA. Instead, successor liability has been treated as merely a theory for imposing liability on a defendant based on some other person's or entity's ERISA violation. *See, e.g., Haw. Carpenters v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 295 (9th Cir. 1987) (determining successor liability based on underlying finding that predecessor employer made delinquent contributions in violation of ERISA). Without any underlying ERISA violation alleged, the Court would have serious questions about its jurisdiction to hear this case. *See Peacock v. Thomas*, 516 U.S. 349, 353-54 (1996) (holding that plaintiff's veil-piercing claim, brought to enforce a judgment against a non-party to previous ERISA action, did not state a cause of action under ERISA and could not independently support federal jurisdiction).

Nevertheless, the Court has examined the FAC and is satisfied that it provides sufficient facts to state a violation of ERISA based on Connell's alleged complete withdrawal from participation in the Trust. *See* 29 U.S.C. § 1381(a) ("If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability."). Plaintiffs have also alleged facts indicating that they have met their responsibilities under the statute in establishing such liability, including properly notifying Connell and demanding payment. *See* 29 U.S.C. § 1399 (detailing the requirements of a plan sponsor following an employer's withdrawal).[4]

---

[4] The Court also notes that Connell's status as a non-party to this action does not affect the Court's ability to adjudicate Connell's liability under ERISA. In *Santa Maria v. Owens-Illinois, Inc.*, 808 F.2d 848 (1st Cir. 1986), the First Circuit concluded that it could decide the successor liability issue before it notwithstanding that the predecessor, Empire, was not a party to the action, or to the other 11 related actions. *Id.* at 851 n.5. After noting that "[a] predecessor's liability . . . must generally be established by adjudication before it can be determined if such predicate liability is passed or imputed to the successor," the court reasoned as follows:

> Although an adjudication of Empire's liability to plaintiffs will not be binding upon it, because of its non-party status, it is apparent that plaintiffs and Empire-Ace are procedurally postured to litigate that issue to a result that will be enforceable *as between them* in each of

12

Defendants first assert that Defendant Ali cannot be held personally liable for the withdrawal liability because he is not an "employer" as defined by ERISA, and, even he is, Plaintiffs have not alleged any theory, such as veil piercing, that could make Ali personally liable for Bay Bridge, Inc.'s liability. Motion at 4; Reply at 3-4. Plaintiffs contend that Ali's liability does not depend on Ali's status as the contributing employer under ERISA since liability can attach to successor employers. Opposition at 8.

Generally, an employer is not obliged to contribute to a multiemployer benefit plan unless the employer is a signatory to the plan. 29 U.S.C. § 1145; *Carpenters S. Cal. Admin. Corp. v. Majestic Hous.*, 743 F.2d 1341, 1346 (9th Cir. 1984). "However, a non-signatory may be subject to liability under certain limited circumstances, such as where the non-signatory is the alter ego or successor to a signatory." *Auto. Indus. Pension Trust Fund v. S. City Ford, Inc.*, 2012 WL 1232109, at *2 (N.D. Cal. Apr. 12, 2012) (Wilken, J.) (citing *Haw. Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289 (9th Cir. 1987)). Thus, Defendants Ali and Bay Bridge, Inc. can potentially be held liable notwithstanding their status as non-signatories to the Trust.

Regarding Ali, Plaintiffs have not alleged facts that would make him personally liable for the debts incurred by his company. *See De Breceni v. Graf Bros. Leasing, Inc.*, 828 F.2d 877 (1st Cir. 1987) (declining to extend liability for withdrawal liability to company's controlling shareholders and officers absent facts that would warrant piercing the corporate veil). While Ali signed the Purchase Agreement as an individual, and thus for a moment may have been a potential "successor," Plaintiffs allege that Ali then assigned all rights and obligations under the Purchase Agreement to the LLC, which later became Bay Bridge, Inc. FAC ¶ 17 (citing Ex. 2 (Bill of Sale)). Accordingly, the

---

> the eleven cases, just as was done in *Santa Maria*. . . . A final judgment on the issue will be fully enforceable *as between the plaintiffs and Empire-Ace* in the context of "the case and controversy" that exists between them in each case.

*Id.* (emphasis original). As in *Santa Maria*, any conclusion made by this Court in regards to Connell's ERISA liability will be enforceable between only the parties to this action.

13

claims against Ali are dismissed with leave to amend to allege facts regarding Ali's personal liability.

Turning to the question of Bay Bridge, Inc.'s liability, the Court finds that Plaintiffs have adequately alleged Bay Bridge, Inc.'s liability based on a successor liability theory. Liability of an employer for the obligations of its predecessor attaches "when (1) the subsequent employer was a bona fide successor and (2) the subsequent employer had notice of the potential liability." *Steinbach v. Hubbard*, 51 F.3d 843, 846 (9th Cir. 1995); *see S. City*, 2012 WL 1232109, at *3 (applying the doctrine to withdrawal liability under ERISA); *Operating Eng'rs & Pension Trust Fund v. W. Power & Equip. Corp.*, 2011 WL 1153300, at *3 (N.D. Cal. Mar. 28, 2011) (Hamilton, J.) (same).

The first issue is whether Defendant Bay Bridge, Inc. was a bona fide successor to Connell.[5] "Whether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and predecessor." *Id.*; *see Haw. Carpenters*, 823 F.2d at 293 ("As the Supreme Court has stated, 'the focus is on whether there is "substantial continuity" between the enterprises.'" (quoting *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27 (1987)). Plaintiffs allege that pursuant to Section 2 of the Purchase Agreement, Defendants acquired from Connell "substantially all of the dealership's assets, goodwill, franchise, intangible property, vehicle inventory, parts and accessories inventory, miscellaneous inventory and supplies and service or repair work in progress." FAC ¶ 19. Additionally, Plaintiffs contend that Defendants have "substantially continued" the Connell Dealership's business operations, "providing the same services; using the same facilities, machinery and equipment; employing the same employees; completing service works in progress and servicing the same customers, all as contemplated by the Purchase Agreement." *Id.* Defendants do not directly address these allegations, but state that they sell different vehicles than the Connell Dealership, and that while some employees remained, they were not unionized. Motion at 3. The Court finds that Plaintiffs have adequately alleged that Bay Bridge, inc. is a bona fide successor to Connell's Dealership business. *See S. City*, 2012 WL

---

[5] Defendants' contention that Plaintiffs have failed to allege privity between Connell and Defendant Bay Bridge, Inc. is baseless. Plaintiffs do make such an allegation, *see* FAC ¶ 9, and Defendants present nothing beyond their conclusory assertions to the contrary. Defendants cite to "Exhibit 5" of their RJN, but Defendants RJN includes only Exhibits 1-4.

14

1232109, at *3 (denying motion to dismiss where plaintiff alleged "that Defendant SCM continued using the same business name, 'South City Ford;' providing the same services; using the same facilities, machinery and equipment; employing the same employees; completing work in process; and serving the same customers").

The second issue is whether Bay Bridge, Inc. had notice of Connell's potential withdrawal liability. Plaintiffs allege that Amendment 1 to the Purchase Agreement explicitly contemplates the possibility that Connell would incur withdrawal liability as a result of the sale, and that Amendment 2 to the Purchase Agreement contains a promise by Bay Bridge, Inc. to take "sole responsibility" for "any cost to Seller for unfunded pension liabilities under the Plan or similar items" that incur "as a result of the consummation of the sale of the Dealership in accordance with this Agreement." FAC ¶ 22 (quoting Ex. 1 (Purchase Agreement)). Bay Bridge, Inc. also agreed to "indemnify, defend and hold Seller free and harmless from any costs thereof." *Id.* Defendants contend that this quoted language is merely an indemnity provision running in favor of Connell and does not give rise to any obligation to Plaintiffs. Motion at 6. However, the issue is *notice*. Plaintiffs' allegations concerning Bay Bridge, Inc.'s actual and constructive knowledge of the potential withdrawal liability are sufficient to defeat Defendants' Motion to Dismiss. *See S. City*, 2012 WL 1232109, at *3; *Operating Eng'rs*, 2011 WL 1153300, at *3.

### D.     Whether Plaintiffs State a Viable Breach of Contract Claim

Defendants challenge Plaintiffs' contract claim on the basis that Plaintiffs, who are not a party to the Purchase Agreement, cannot assert their claim by virtue of their alleged third party beneficiary status.[6] Under California law, a purported third-party beneficiary must show that the

---

[6] Defendants' argument that Plaintiffs' claim is barred by the statute of limitations is incorrect. The Purchase Agreement is a written contract and therefore governed by a four-year statute of limitations. Cal. Code Civ. P § 337. A cause of action accrues when the plaintiff discovers, or could have discovered through reasonable diligence, the injury and its cause. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 664 (9th Cir. 1998) (citing *Angeles Chem. Co. v. Spencer & Jones*, 44 Cal. App. 4th 112, 120 (1996)). Plaintiffs allege that the earliest Defendants' breach occurred was October 31, 2007, when Defendants failed to make the first quarterly withdrawal payment. Plaintiffs also appear to claim that Defendants breached by not responding to Plaintiffs' March 21, 2011 demand for payment of withdrawal liability pursuant to the Purchase Agreement. Plaintiffs filed this action on October 25, 2011. Because Plaintiffs brought

1  contract was "made expressly for the benefit of a third person." Cal. Civ. Code § 1559; *Tr. of*
2  *Screen Actors Guild–Producers Pension and Health Plans v. NYCA, Inc.*, 572 F.3d 771, 779 (9th
3  Cir. 2009); *see also Spinks v. Equity Residential Briarwood Apts.*, 90 Cal. Rptr. 3d 453, 468 (2009)
4  ("[I]t is not enough that the third party would incidentally have benefitted from performance . . . .
5  The contracting parties must have intended to confer a benefit on the third party.") (citation and
6  internal quotation marks omitted).

7  The Court finds that the Purchase Agreement includes an affirmative promise by Bay Bridge,
8  Inc. "that in the event and as a result of the consummation of the sale of the Dealership in
9  accordance with this Agreement, there is any cost to Seller for unfunded pension liabilities under the
10 Plan or similar items, *such cost shall be the sole responsibility of Purchaser*." FAC, Ex. 1 (Purchase
11 Agreement), § 1, Amendment 2 (emphasis added). Plaintiffs have adequately alleged that this
12 transfer of responsibility for payment of the withdrawal liability was intended to benefit Plaintiffs
13 and that the benefit to Plaintiffs would not merely be incidental to performance of the promise.[7]

14 Defendants' contention that third party beneficiary status is not warranted because Section 1
15 of Amendment 2 includes an indemnity provision running in favor of Connell is unavailing.
16 Although agreements that include an indemnity provision recognizing a pre-existing obligation to
17 pay ERISA-related liabilities generally do not give rise to third party beneficiary status, where an
18 agreement, such as the one here, also imposes an affirmative obligation to pay a liability, third party
19 beneficiary status may lie. *See NYCA*, 572 F.3d at 779 (finding that provision requiring TaylorMade
20 to indemnify NYCA, signatory to collective bargaining agreement, for required contributions did not

---

their claim within four years of discovery of the injury and its cause, Plaintiffs' claim is not barred by the statute of limitations.

[7] Defendants appear to argue that because the Purchase Agreement refers to "unfunded pension liabilities" and not specifically to "withdrawal liability," Defendants are not responsible in any way for withdrawal liability. Defendants' argument, however, is unsupported by any authority and the cases they do cite do not address this issue. Rather, because "[a]n employer's withdrawal liability is equal to the employer's proportionate share of the plan's unfunded vested employee benefits," *Park S. Hotel Corp. v. N.Y Hotel Trades Council*, 851 F.2d 578, 580 (2nd Cir. 1988), withdrawal liability is directly correlated with any unfunded pension liabilities. Accordingly, the Court finds that the language in the Purchase Agreement is broad enough, for the purpose of a motion to dismiss, to include withdrawal liability as a "cost to Seller for unfunded pension liabilities under the Plan" incurred "as a result of the consummation of the sale of the Dealership."

16

impose an affirmative obligation on TaylorMade to contribute in the first instance and instead was meant to protect NYCA; payment to NYCA would therefore only incidentally benefit the plans); *Operating Eng'rs & Pension Trust Fund v. W. Power & Equip. Corp.*, 2011 WL 2516775, at *2 (N.D. Cal. June 23, 2011) (Hamilton, J.) ("Plaintiffs' amended allegations fail to demonstrate that the letter agreement discloses any affirmative promise by Case Dealer to convey unpaid withdrawal liability to the Trust or to assume WPE defendants' withdrawal liability. Rather, the letter agreement recognizes WPE defendants' pre-existing obligations to the ERISA plan, rendering the plan only an incidental, not intended, beneficiary of the agreement."). The indemnity provision here runs in favor of Connell, recognizing that Bay Bridge, Inc. has assumed "sole responsibility" for Connell's withdrawal liability. Furthermore, Bay Bridge, Inc.'s affirmative promise to bear "sole responsibility" for the withdrawal liability is separate and in addition to its promise to indemnify Connell for any withdrawal payments it may make. *See NYCA*, 572 F.3d at 779. Defendants' Motion is accordingly denied as to Plaintiffs' contract claim against Bay Bridge, Inc.[8] As discussed above, because Plaintiffs have not alleged facts concerning Ali's personal liability for the alleged breach of contract, Defendants' Motion is granted as to him.

### E.  Whether Plaintiffs' Claims Should be Dismissed Under Rule 12(b)(7)

As noted above, Rule 12(b)(7) provides that a complaint may be dismissed for failure to join an indispensable party pursuant to Rule 19 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(7); 19(b). Defendants seek to dismiss the FAC because Plaintiffs did not join them in the earlier Connell Action. However, Defendants have provided no authority, and the Court finds none,

---

[8] Defendants' additional argument that Plaintiffs' contract claim is barred by the California law of retraxit is rejected by the Court. Assuming retraxit applies to the contract claim, the doctrine requires that the claims or issues in a present action be identical to claims or issues presented in an earlier action. *See Rice v. Crow*, 81 Cal. App. 4th 725, 733-34 (2000). Only then may an earlier action that was voluntarily dismissed with prejudice bar claims or issues in a present action. *Id.* Here, Defendants have not shown that the claims or issues presented in the Connell Action are identical to Plaintiffs' breach of contract claim or the issues the claim presents. The Connell Action did not include a breach of contract claim that is the basis for liability here. Although both actions seek the same ultimate result—recovery of the withdrawal liability—the Court would not conclude that this similarity alone renders the claims and issues identical.

supporting Defendants' assumption that Rule 19 applies to a failure to join a party in a *previous* action. The Court accordingly DENIES Defendants' Motion to Dismiss pursuant to Rule 12(b)(7).

## V.   CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. An amended complaint, if any, shall be filed within thirty (30) days of the date of this order.

IT IS SO ORDERED.

Dated: June 16, 2012

JOSEPH C. SPERO
United States Magistrate Judge